UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LILLIE HARRIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 4:18-CV-00690-JAR |
| MARK T. ESPER, Secretary, Department of the Army, | ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM & ORDER**

This matter is before the Court on Defendant Mark Esper's Motion for Summary Judgment. (Doc. No. 16). Plaintiff Lillie Harris brought this employment action pro se, claiming discrimination on the basis of race and gender[1] under Title VII, 42 U.S.C. § 2000e *et seq.*, and age under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

From the outset, the Court will address the response filed by Plaintiff to Defendant's motion for summary judgment. Initially, Plaintiff did not file a timely response, and the Court on its own review of the file granted Plaintiff an extension of time to do so. In her filing, she raises the issue of her lack of representation by an attorney. She also states that "[a]ll documented evidence in support of my claim was repeatedly presented over a ten-year period." (Doc. No. 20).

---

[1] Plaintiff on her employment discrimination complaint form checks boxes indicating that she believes she was discriminated against because of her race, color, and age. However, in her brief statement of the case, Plaintiff states that she believes she was discriminated against "based on [her] race (black), sex (female), and age (63)." (Doc. No. 1). Accordingly, the Court will include in its decision Plaintiff's claim based on sex discrimination.

1

"There is no constitutional right or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). Here, the Court notes that the record, including the administrative proceedings during which Plaintiff was represented, contains sufficient information for the Court to rule on the merits of Defendant's motion. Thus, to the extent Plaintiff requests appointment of counsel, that request will be denied.

Plaintiff also referenced several medical conditions, to which the Court is sympathetic. However, Plaintiff did not ask for any additional time to file a response due to those conditions, and the Court must rule on those matters that are properly before it, particularly where, as here, the matter has been litigated over the course of ten years. Thus, for the reasons set forth below, Defendant's motion for summary judgment will be granted.

I. **Background**[2]

---

[2] The facts are taken from Defendant's Statement of Uncontroverted Material Facts, Doc. No. 18. Plaintiff did not respond to Defendant's Statement of Facts. Local Rule 4.01(E) provides:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

Plaintiff's pro se status does not excuse her from complying with local rules. *See Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983). As a result of her failure to meet the requirements of Local Rule 4.01(E), Plaintiff is deemed to have admitted all facts in Defendant's Statement of Uncontroverted Facts. *Mayes v. Aguilera*, No. 2:18-CV-0002 JAR, 2019 WL 4419064, at *1 n.2 (E.D. Mo. Sept. 16, 2019). However, Plaintiff's failure to respond properly to Defendant's motion does not mean summary judgment should be automatically granted in favor of Defendant. "Even if the facts as alleged by Defendant[] are not in dispute, those facts still must

At all relevant times to this action, Plaintiff, an African American female, was a GS-6 level Human Resources Assistant for the Army at the Human Resources Command ("HRC") Facility in St. Louis. In or around 2007, management conducted an "equalization study" and determined that some of the positions at St. Louis HRC needed to be "upgraded" to align more closely with an HRC located in Alexandria.[3] Employees who were interested in the "upgraded" positions were required to submit their resumes on Resumix, a computer software program that conducts an automated word search of the candidate's resume and assign a score to the candidate based on his or her knowledge, skills, and abilities. Resumix determines which candidates are "best qualified" and should be referred for the position.

Plaintiff applied for upgraded positions under four vacancy announcements. On March 27, 2008, Defendant determined that Plaintiff was not qualified for a GS-7 human resources assistant position ("GS-7 position") based on her listed typing speed. On April 11, 2008, Plaintiff was determined to be ineligible for another position in human resources at the GS-9 level ("GS-9 position") based on a "time-in-grade" requirement for that position. A white female, who was younger than Plaintiff, was selected for the GS-7 position, and another white female, approximately the same age as Plaintiff, was selected for the GS-9 position.

On March 28, 2008 and May 1, 2008, Plaintiff was not referred for the remaining two positions following a determination by the Resumix system that she was "not in the group of best qualified candidates." (Doc. No. 18-6). Plaintiff claims that the candidates who were determined to be "best qualified" received assistance from Lieutenant Colonel Gena Bonini—Plaintiff's immediate supervisor—who provided those candidates with a list of "buzz words" that

---

establish [it] is entitled to judgment as a matter of law." *Cross v. MHM Corr. Servs., Inc.*, No. 4:11-CV-1544 TIA, 2014 WL 5385113, at *3 (E.D. Mo. Oct. 10, 2014) (alternation added).

[3] Defendant also had an HRC facility in Indianapolis, Indiana.

would ensure that the Resumix system would identify them as "best qualified." In her deposition, Plaintiff stated that she did not remember which employees received these "buzz words," nor could she identify the specific "buzz words" provided. Plaintiff contacted an Equal Employment Opportunity Commission counselor regarding her failure-to-promote claims on August 5, 2008.

In or around 2010, HRC facilities located in St. Louis, Missouri, Alexandria, Virginia, and Indianapolis, Indiana were closed pursuant to the Defense Base Closure and Realignment Act ("BRAC"). The action was a "transfer of function," meaning that Defendant was required to provide job opportunities at a new location to employees of the closed facilities. Thus, Defendant offered all employees at St. Louis HRC transfers to a facility at Fort Knox. Employees who accepted the transfer opportunity would be placed in the same series and grade that they held at HRC St. Louis. Employees who declined transfer were not eligible to receive Voluntary Separation Incentive Pay ("VSIP"), pursuant to a Department of Defense rule.[4]

The bargaining unit at St. Louis HRC requested that employees who were not interested in relocating be given the option to participate in the "Job Swap Program"[5] with other agencies

---

[4] Specifically, Department of Defense Instruction 1400.25 "DoD Civilian Personnel Management System: Voluntary Separation Programs" provides that an employee who would otherwise be eligible for VSIP or other buyout would be ineligible if the employee has "declined to relocate with his or her position or declined a transfer of function." (Doc. No. 18-14).

[5] Defendant does not define the Job Swap Program. However, in a filing submitted to the Equal Employment Opportunity Commission, Plaintiff provides the following example to explain how the Job Swap Program is used:

> To illustrate, as the record shows Complainant, like many of her co-workers, wanted to continue their federal careers, but for whatever reason, were not willing to move to Fort Knox. Under the SWAP Job Program, the agency would contact other federal agencies in the area whose jobs match those of the transferring agency to see if they would accept a reassignment to the transferring agency (and effectuate the swap) and then relocate with the transferring agency.

in the area. However, management decided not to use the Job Swap Program because there were few Department of Defense or federal agencies left in the area, and thus, few positions available. Instead, Defendant encouraged employees who were not willing to transfer to register in the "Priority Placement Program."[6] In October 2010, Plaintiff declined transfer to Fort Knox, and she also declined participation in the Priority Placement Program. Thereafter, Defendant issued a Notice of Separation effective October 22, 2010.

On October 26, 2010, Plaintiff joined an Equal Employment Opportunity Commission ("EEOC") administrative class complaint, alleging discrimination, in that St. Louis HRC employees were not offered the Job Swap program or VSIP benefits due to the demographics of the office compared with other HRC locations.[7] That action was dismissed on May 10, 2011, for failure to satisfy the four required elements for a class action. All class members were advised of their rights to pursue an individual complaint of discrimination. (Doc. No. 101 at 7).

On September 12, 2011, Plaintiff, who was represented by counsel, filed a formal complaint with the EEOC, alleging that Defendant discriminated against her on the basis of race (African-American), sex (female), and age (66), when: (1) she was not offered the Job Swap

---

("Complainant's Memorandum in Opposition to Agency's Motion for Decision without a Hearing," Doc. No. 1-1, at 14).

[6] Defendant does not define the Priority Placement Program.

[7] Plaintiff did not offer any evidence supporting the demographic makeup of the different HRC offices. However, the administrative record reflects that as of January 30, 2006, the racial makeup of St. Louis HRC was 50% White, 48% Black, 1% Hispanic, and 1% American Indian. Alexandria HRC was 51% White, 42% Black, 3% Asian/Pacific, 3% Hispanic, and 1% Other. Indianapolis HRC was 67% White, 27% Black, 6% Asian/Pacific, and 1% American Indian. The gender makeup of HRC St. Louis was 30% male and 69% female, compared to HRC Alexandria (36% male, 64% female) and HRC Indianapolis (40% male, 60% female). (Doc. No. 18-1, Final Decision of the Department of the Army, at 28).

Program and $25,000 VSIP, in connection with BRAC actions; and (2) Defendant failed to promote Plaintiff.

Plaintiff's complaint was initially dismissed as untimely because Plaintiff had failed to present her claims to an EEO counselor within forty-five days. However, the EEOC Office of Federal Operations ("OFO") overruled the decision, determined that Plaintiff had timely initiated EEO counselor contact, and remanded the complaint for investigation. On August 4, 2015, the EEOC issued a final agency decision on Plaintiff's claims, finding no discrimination. This decision was affirmed by the OFO on August 9, 2017, and Plaintiff's request for reconsideration was denied on January 25, 2018.

Plaintiff filed this lawsuit pro se on April 30, 2018, claiming discrimination on the basis of race, sex, and age, for Defendant's failure to (1) promote Plaintiff on four occasions; and (2) offer VSIP and/or participation in the Job Swap Program due to race and gender bias.[8]

On July 17, 2019, Defendant filed this motion for summary judgment, arguing that Plaintiff fails to present a prima facia case for discrimination, and she fails to present any evidence that Defendant's legitimate, nondiscriminatory reasons given for the above-referenced actions were pretext. Defendant also argues that Plaintiff's failure to promote claims should be dismissed for failure to exhaust administrative remedies because she did not contact an EEO counselor within 45 days of the non-selections.

---

[8] On the employment discrimination complaint form, Plaintiff checks boxes indicating that the nature of the case includes failure to promote, retaliation, and harassment. However, in her brief statement of the case, Plaintiff contends that she was subjected to disparate treatment when she was not offered the Job Swap Program and VISP of $25,000. Plaintiff does not assert any claims for harassment or retaliation in her description, nor did she raise any such claims in her EEOC complaint. Accordingly, to the extent Plaintiff asserts such claims, they are dismissed for failure to exhaust administrative remedies. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012) (affirming the district court's dismissal of a claim for failure to include that claim in the plaintiff's EEOC complaint).

## II. Standard of Review

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. *Id*. When such a motion is made and supported by the movant, the nonmoving party may not rest on her pleadings but must produce sufficient evidence to support the existence of the essential elements of her case on which she bears the burden of proof. *Id.* at 324. "In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy." *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004) (quotations omitted).

## III. Discussion

In cases alleging employment discrimination, direct evidence of discrimination is rare; therefore, most cases rely on circumstantial evidence. In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination. *Id.*, 411 U.S. at 802; *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir. 1994). If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-

discriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." *Id.* at 510-11. The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1316 (8th Cir. 1995). A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times. *Id.* at 515-16. It is not enough to merely discredit defendant's articulated reason for the adverse employment action. A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination. *Id.*; *see also Huston v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir. 1995).

Thus, to avoid summary judgment, Plaintiff must present evidence that, when viewed in its entirety: "(1) creates a fact issue as to whether [Defendant]'s proffered reason is pretextual and (2) creates a reasonable inference that [a discriminatory motive] was a determinative factor in the adverse employment decision." *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir. 1996) (alteration added).

### a. Failure to Promote

#### i. Failure to Exhaust Administrative Remedies

"In order for a federal employee to sue for discrimination under Title VII, the employee must initiate contact with an agency EEO counselor 'within 45 days of the date of the matter alleged to be discriminatory.'" *Blomker v. Jewell*, 831 F.3d 1051, 1062 (8th Cir. 2016) (citing 29 C.F.R. § 1614.105(a)(1)); *see also Betz v. Chertoff*, 578 F.3d 929, 937 (8th Cir. 2009) (same standard for ADEA claims). "A federal employee's claim for damages related to discrete acts of discrimination occurring more than 45 days before a plaintiff contacts an EEO counselor is time-barred. *Southard v. Zinke*, No. 4:17CV2714PLC, 2018 WL 6018754, at *6 (E.D. Mo. Nov. 16, 2018) (citing *Betz*, 578 F.3d at 937). Failure-to-promote claims constitute completed acts at the time they occur. *Burkett v. Glickman*, 327 F.3d 658, 660 (8th Cir. 2003) (citing *National R.R. Passenger Corp. v. Morgan,* 122 S.Ct. 2061, 2072–73 (2002)).

Here, Plaintiff was not promoted on four occasions—March 27, 2008, March 28, 2008, April 11, 2008, and May 1, 2008. The record reflects that Plaintiff first contacted an EEO counselor about those non-selections on August 5, 2008—ninety-seven days after May 1, 2008. (Doc. No. 18-7). This is well beyond the forty-five-day window mandated by law. Moreover, there is no evidence in the record that Plaintiff's failure to timely contact an EEO counselor is subject to equitable tolling. *Claborn-Welch v. Perdue*, No. 17-00748-CV-W-ODS, 2018 WL 1997769, at *4 (W.D. Mo. Apr. 27, 2018) ("Equitable tolling focuses on the employee's excusable ignorance and considers whether a reasonable person in the employee's position would have been expected to know of possible discrimination."). Further, Plaintiff does not argue that she was unaware of the requirement to contact a counselor. Nevertheless, even if Plaintiff's claims were timely, they fail on the merits, as discussed below.

9

ii. <u>Merits</u>

To establish a prima facie claim for failure to promote, Plaintiff must show that "(1) she belonged to a protected class, (2) she met the minimum qualifications and applied for the position, (3) despite her qualifications she was denied the position, and (4) her employer promoted a person of similar qualifications who was not a member of the protected group." *Bryson v. Bridgeway Behavioral Health, Inc.*, 128 F. Supp. 3d 1145, 1150 (E.D. Mo. 2015) (citing *McCullough v. Real Foods, Inc.,* 140 F.3d 1123, 1126 (8th Cir. 1998)); *Hase v. Missouri Div. of Empl't Sec.,* 972 F.2d 893, 896 (8th Cir.1992) (same standard in ADEA context).

The record evidence demonstrates that Plaintiff was not selected for the GS-7 and GS-9 positions because she did not meet the minimum qualifications for those positions; namely, a typing speed requirement and a time-in-grade requirement. Plaintiff has presented no evidence to suggest that she was in fact minimally qualified for those positions, and thus cannot establish a prima facie case of discrimination for failure to promote as to those positions.

With regard to the other two promotions, the record demonstrates that following a review by the Resumix system, Plaintiff was not among the group of best qualified candidates and therefore not referred for further consideration. An employer's decision to select the best qualified candidate constitutes a legitimate, nondiscriminatory justification for Defendant's failure to promote Plaintiff. *See Heaggans v. Arkansas State Highway & Transp. Dep't*, No. 4:15CV00400 JLH, 2017 WL 2888718, at *4 (E.D. Ark. July 6, 2017) ("In the failure to promote context, the Court recognizes that employers routinely select the best qualified candidate."). Further, Plaintiff's allegation that her co-workers were provided with a list of buzz words that would ensure that they were determined to be "best qualified" is wholly unsupported.

Plaintiff has also failed to present any evidence that the candidates selected for the two promotions were less qualified applicants. *Farver v. McCarthy*, 931 F.3d 808, 812 (8th Cir. 2019) ("To show a prohibited reason is more likely because he or she was more qualified than selected candidates, a rejected candidate must present evidence the other candidates were in fact *less* qualified.") (emphasis in the original). Thus, Plaintiff has failed to create an issue of material fact that Defendant's proffered reason for not promoting her was pretext for discrimination. Accordingly, Defendant's motion for summary judgment on Plaintiff's failure-to-promote claims will be granted.

### b. Disparate Treatment Claims

Disparate treatment occurs "where an employer has 'treated [a] particular person less favorably than others because of' a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (alteration in original) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-86 (1988)). "To state a claim for disparate treatment, a plaintiff must allege 'facts or circumstances that give rise to an inference of discrimination,' for example that 'similarly situated employees of another race received different treatment.'" *Pointer v. Walmart Corp.*, No. 4:19-CV-28 PLC, 2019 WL 2869905, at *3 (E.D. Mo. July 3, 2019) (quoting *Gage v.* Brennan, No. 4:17-cv-02872-CAS, 2018 WL 3105418, at 5 (E.D. Mo. June 25, 2008) (citing *Gibson v. Am. Greeting Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012)).

Here, Plaintiff claims that Defendant did not to offer a Job Swap program or VSIP to employees of St. Louis HRC because of the racial composition of St. Louis HRC. She contends that similarly-situated employees at other agencies that were comprised mainly of white, higher graded employees (including the Army Review Board Agency) were offered the VSIP and Job Swap Program.

Assuming, without deciding, that Plaintiff has established a prima facia case of discrimination, the Court concludes that Defendant has shown a legitimate, non-discriminatory reason for not offering a Job Swap Program or VSIP to employees at St. Louis HRC. Specifically, James Pattison, the deputy director of the United States Army Civilian Personnel Advisory Center, stated in an affidavit that Department of Defense rules did not allow management to offer VSIPs to employees at HRC St. Louis because they were offered the opportunity to transfer. He further stated that employees at the Army Review Board Agency were offered VSIPs because their positions were eliminated, not transferred. Further, Mr. Pattison stated that because there were few Department of Defense or other federal agencies left in the St. Louis area, Defendant decided not to pursue the Job Swap program and instead focused on enrolling employees in the Priority Placement Program. Thus, Defendant has articulated a legitimate, nondiscriminatory reason for its decision not to offer VSIP and a Job Swap program to employees at HRC St. Louis. *See Watson v. Wilkie*, No. 4:17-00192-CV-RK, 2019 WL 3358560, at *9 (W.D. Mo. July 24, 2019) ("The *McDonnell Douglas* burden shifting framework requires Plaintiff to first establish a prima facie case, and if Plaintiff establishes a prima facie case, Defendant must show the actions were made for nondiscriminatory purposes.") (citing 411 U.S. at 803).

The burden then shifts to Plaintiff to demonstrate that Defendant's stated reason is a pretext for discrimination. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc). Upon careful review of the record, the Court concludes that there is no evidence to support Plaintiff's claim that the actions taken by Defendant were discriminatory. In fact, the record is devoid of evidence suggesting that race, gender, or age had any role in Defendant's

decision-making. Accordingly, the Court will grant Defendant's motion for summary judgment on Plaintiff's disparate treatment claims.

## IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Mark T. Esper's motion for summary judgment is **GRANTED**, as set forth in this Order.

A separate Judgment will accompany this Memorandum and Order.


Dated this 16th day of October, 2019.

                                                                _____
                                                                 JOHN A. ROSS
                                                                 UNITED STATES DISTRICT JUDGE